**Arthur C. ROUMEL, Appellant,**

v.

**DRILL WELL OIL COMPANY, Appellee.**

**No. 17593.**

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1959.

W. B. Browder, Jr., Midland, Tex., Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., of counsel, for appellant.

R. Marvin Pierce, Wichita Falls, Tex., Henry D. Akin, Jr., Dallas, Tex., for appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

October 1, 1957, appellee Drill Well Oil Company [1] brought suit in a Texas state court against appellant Arthur C. Roumel, a non-resident of the State of Texas who was a resident citizen of Washington, D. C.,[2] praying for relief in

---

1. A partnership composed of Joe E. Fletcher and Frank D. Kinnie, residents of Wichita Falls, Wichita County, Texas, sometimes hereinafter known as plaintiff or Company.

2. W. J. Friedman, III was sued also and personal service (similar to that obtained upon appellant) had on him in Virginia; but the court below dismissed the action as to him for want of jurisdiction of his person.

connection with certain oil and gas leases situated in the State of Texas. The complaint alleged that plaintiff had, March 1, 1957, filed liens upon the Labor and Materialmen's Lien Records of the counties in which the leased lands were situated, and that defendant Roumel was, or claimed to be, owner of undivided interests in the leases which plaintiff was operating, having acquired them under Trustee's deed on May 7, 1957, and that Friedman had acquired them by assignment from plaintiff May 21, 1956. The prayer of the complaint was for personal judgment against Roumel and Friedman for something over $18,000.00 and "for foreclosure of liens and for such further relief to which plaintiff may be entitled."

The clerk of the state court issued a citation for personal service dated Oct. 2, 1957, and the United States Marshal for the District of Columbia certified that he served it on Roumel Oct. 7th, the return being filed in the state court October 15th. The citation was issued under authority of Rule 108 of Vernon's Rules of Civil Procedure, State of Texas.[3] Appellant seasonably filed in the state court a petition removing the suit to the United States District Court and filed his answer, stating as his first defense that the court did not have jurisdiction of his person.

The record does not contain an order denying the plea to the jurisdiction until the final judgment on the merits was entered Oct. 6, 1958. At the beginning of the hearing on the merits April 3, 1958, however, the trial court stated that the first defense of Roumel was overruled.[4] Appellant Roumel had, on the day the trial began, filed his amended answer to the supplemental complaint of the company filed three days before. In this amended answer Roumel stated that it was being filed "after * * * the plea to the Court's jurisdiction as pleaded in defendant's original answer has been overruled, and exception taken by this defendant, * * *." In the final judgment entered by the court below Oct. 6, 1958, the court formally overruled appellant's motion to dismiss for want of jurisdiction.[5]

■ At the threshold of the case, therefore, is the question of the correctness of the court's action in assuming jurisdiction over appellant for the ren-

3. "Defendant Without State

"Where the defendant is absent from the State, or is a non-resident of the State, the form of notice to such defendant of the institution of the suit shall be the same as prescribed for citation to a resident defendant; and such notice may be served by any disinterested person competent to make oath of the fact in the same manner as provided in Rule 106 hereof. The return of service in such cases shall be indorsed on or attached to the original notice, and shall be in the form provided in Rule 107, and be signed and sworn to by the party making such service before some officer authorized by the laws of this State to take affidavits, under the hand and official seal of such officer. A defendant served with such notice shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with a citation within this State.

"Source: Arts. 2037 and 2038."

4. "The Court: * * * the first defense of the defendant Roumel * * * being the defense and motion that the Court lacks jurisdiction of the suit and that the action should be dismissed against that defendant is overruled.

"Mr. Browder: Your Honor, as I understand, we will have our exception, and Your Honor's order will so show.

"The Court: Yes. Call the case for trial.

* * * * *

"Mr. Browder: Your Honor, subject to our exception to Your Honor's ruling on the plea to the jurisdiction, we are ready to proceed as Your Honor directs * * *."

5. "* * * Arthur C. Roumel, by his attorney having presented his motion to dismiss on the claimed ground that the Court lacked jurisdiction of the person of the defendant and the cause, and the Court having heard such motion and argument of the counsel and being of the opinion that such motion should be overruled, did overrule the same, it being hereby

"Ordered, adjudged and decree that defendant, Arthur C. Roumel's motion to dismiss be and the same is hereby denied and overruled."

dition of a personal judgment.[6] The judgment made no mention of any liens, did not purport to deal with title to any property, and was in fact nothing but a personal judgment in favor of the company and against Roumel for what the court adjudged to be his part of the operating and developing expenses.

Appellant contends that the court was without jurisdiction to render a personal judgment against him, it being undisputed that he was a non-resident of the State of Texas. The court did not assign any reason for its action in denying Roumel's plea to the jurisdiction and motion to dismiss, and we are limited to appellee's statement of the basis of the court's ruling.[7]

We do not agree with the reasoning of the court below as described by appellee, nor with the appellee's argument. The court below recognized that the mere mention of liens of the general character of materialmen's liens in appellee's pleadings did not invest the proceeding with an *in rem* character. From the argument before us it appears undisputed that Texas has statutes providing for attachment of the property of non-residents and garnishment of debts due them, but appellee did not choose to avail itself of any of those rights.

**6.** The written findings of fact did not mention the question of jurisdiction and the above quoted portion of the final judgment is the only minute entry with respect to it. The findings of fact and conclusions of law were addressed entirely to the merits adjudging that Roumel had acquired from Friedman on Dec. 8, 1957 equitable ownership of undivided interests in the leases being operated by the company, which interests Friedman had theretofore acquired from it. The conclusion of law was that Roumel had acquired a working interest in the leaseholds and was bound to pay his proportionate part of the costs of operation, and that he owed the company $14,912.20 for which judgment was rendered.

**7.** Appellee's brief thus sets forth that basis:

"Appellee there [i. e., in the trial court] urged that defendant, Arthur C. Roumel, had subjected himself to *in personam* jurisdiction and certainly as to the full 'res' of the controversy either as a matter of waiver, pleading to the issue, or pleading affirmative matter, and urged the case of Vanderbilt v. Vanderbilt· [354 U.S. 416], 77 S.Ct. 1360 [1 L.Ed.2d 1456], for its proposition that in such suit, involving a full faith and credit conflict, the court actually gave preference and *honored* the substituted service in the State (New York) involving the 'res' of the property as against that of the State (Nevada) where no property was involved and described Mrs. Vanderbilt's right to money support as an *in rem* right.

"Appellee also urged T[exas] & P[acific] Ry. Co. v. Bigger, 239 U.S. 330 [36 S.Ct. 127], 60 L.Ed. 310, for the proposition that the Federal Court's jurisdiction is not limited by the State Court's jurisdiction nor is it to be less than the State Court's jurisdiction in situations where the defendant, served outside of the district, has appeared to defend his interest in 'res.' * * *

\* \* \* \* \*

"The Judge of the United States District Court for the Northern District of Texas seemed to rely more heavily on McGee v. International Life Insurance Co. [355 U.S. 220], 78 S.Ct. 199 [2 L. Ed.2d 223] (the reports of which had just been made available). In fact, the Court read to Counsel and Appellees the approximate sections of the McGee case which are quoted and referred to in the more recent case of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228 [2 L.Ed. 2d 1283], and which are as quoted in appellant's brief.

"The Court stated that, while he felt the Vanderbilt case was applicable in its reasoning, the McGee case was so much stronger and seemed to make the matter clear.

"Appellee contends that the three cases considered together clearly support the opinion of the court below that defendant, Arthur C. Roumel, was subject to *in personam* jurisdiction and that Drill Well Oil Company should have a personal judgment against him. Drill Well is the party plaintiff, in the state where defendant's property is situated, and which defendant has had more than *minimal contacts* within Texas, and which plaintiff resident properly issued non-resident service citation therefrom. This is the position of the prevailing party in all three cases, provided the 89th District Court in Wichita County, Texas, had adequate jurisdiction of the matter at the time of removal."

It is clear that Texas has not attempted, by Rule 108 of its Rules of Civil Procedure or by any means, to vest jurisdiction in its courts to render personal judgments against non-residents. Wherever it has been drawn in question, Rule 108 has been held to be nothing more than a notice to a non-resident of the pendency of a suit involving property within the State of Texas. When called upon to apply the rule as conferring jurisdiction upon a Texas court to render a personal judgment against a non-resident,[8] Judge Allred, of the United States District Court for the Southern District of Texas, characterized the rule as one "usually employed in proceedings in rem" and stated: "This type of service was, of course, a complete nullity and did not subject defendants to the jurisdiction of the state court."[9]

In a suit arising under Articles 2037 and 2038 (declared to be now Rule No. 108, Texas Rules of Civil Procedure) of Vernon's Annotated Civil Statutes, the Texas Court of Civil Appeals [10] reversed a personal judgment obtained by service of non-resident notice such as is here involved. The suit was by a member of a dissolved partnership against another member, and it referred to monies in the hands of a resident trustee who was collecting the accounts of the partnership, but who was not made a party to the suit. In reaching the conclusion that a personal judgment could not stand, the court stated:

> " * * * He [the trustee] was not made a party to the suit and the judgment is not binding upon him or the funds in his hands. He resided in Palo Pinto County, where the oil well was situated and where the funds which had been collected on the claim were apparently in his possession. *No attachment or garnishment was levied upon or run against the funds in his hand as trustee; nor was any process issued against the original debtor subjecting any balance that might be due on the original claim or debt to the jurisdiction of the court. The suit or proceeding was therefore not one in rem, because the court acquired no jurisdiction over either the funds in the hands of the trustee, or over any balance that might be due by the original debtor on the claim in suit.* The suit or proceeding was merely to establish an interest in the claim or debt, or was to establish an alleged contractual right to an interest therein as against the appellant alone. No interest in the trust fund as against the trustee could be determined, because the trustee was not a party to the suit. Nor had the trust fund been subjected to the jurisdiction of the court. *The suit or proceeding was clearly one in personam, and consequently the service of the nonresident notice only on appellant was insufficient to confer jurisdiction on the trial court* to adjudicate the cause or to sustain the personal judgment rendered against appellant." [Italics added.]

The court cited Articles 1975 and 1976 of Vernon's Statutes as being *in pari materia* and listed cases under those statutes as being applicable to a proceeding under Rule 108. Among the cases there cited was Erwin v. Holliday, Tex.Com. App.1938, 131 Tex. 69, 112 S.W.2d 177, affirming and adopting the opinion of the Court of Civil Appeals, 1935, 85 S.W.2d 355. The two opinions discuss fully the character of suits involving property in Texas and of notices to nonresidents provided by Texas statutes. These two decisions are authority for the principle that a suit to cancel a receipt obtained by fraud was a personal action not maintain-

---

8. Rodriguez v. Hearty, D.C.1954, 121 F. Supp. 125.

9. Citing Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; and Guerra De Chapa v. Allen, D.C.Tex., 119 F.Supp. 129.

10. Knox v. Quinn, Tex.Civ.App., 1942, 164 S.W.2d 580, 581.

able upon such nonresident notices even though the party bringing the suit "also sought a decree declaring him to be the owner of one-fourth of seven-eighths of the first oil produced from a well upon a certain 50 acres of land * * *." The action there approaches much more nearly to one *in rem* than the one before us. No Texas case is cited which has any tendency to question these principles or to sustain appellee's position with respect to them.[11]

■ The recurrent, albeit obscure, arguments of appellee that appellant waived his contention that the court below did not have jurisdiction over him for the rendition of a personal judgment are equally without substance. The specific language of Rule 12(b), F.R.C.P. answers appellee's position: "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."[12] The same rule gave appellant the right to raise the jurisdictional question by a preliminary motion, but with the specific provision that the right should be "at the option of the pleader." The fact is that the first paragraph of appellant's original answer was a plea to the jurisdiction of the court, and the same is true of his supplemental answer. From the facts recited above, it is manifest that this defense had been called up and acted upon adversely to appellant before any evidence on the merits was introduced.

■ Finally, we deal with appellee's contention that the three Supreme Court cases listed supra,[13] considered together, support the opinion of the court below that Roumel was subject to *in personam* jurisdiction and to rendition by the court below of a personal judgment against him based upon the "minimal contacts" theory. It is difficult to discern how appellee can get any comfort out of Vanderbilt. On the other hand, the Supreme Court, through Mr. Justice Black, said (354 U.S. at page 418, 77 S.Ct. at page 1362): "It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant,"

---

11. Appellee states in its brief apparently as an additional contention: "As to nonresident service, in causes arising initially in the Federal Court under Title 28, Section 1655 of U.S.C.A., (see Dana v. Searight, [10 Cir.] 47 F.2d 38, certiorari denied [283 U.S. 856, 51 S.Ct. 649], 75 L.Ed. 1462, and Graff v. Nieberg, [7 Cir.] 233 F.2d 860)." We held in Stewart v. United States, 5 Cir., 1957, 242 F.2d 49, 52, that this federal statute was effective only to bring absent defendants into proceedings *in rem*. This not being such a proceeding, this contention is without merit, besides being without support, because appellee made no effort to obtain service under it after the suit was removed to the federal court. It is worthy of note also that by Rule 4(f), F.R.Civ.P., 28 U.S.C.A., it is provided that a summons out of the United States District Court may be served only in the state in which the court is held.

12. In 2 Moore's Federal Practice, 2d Ed. pp. 2260–2264, it is stated: "Pleading such defenses as (2)–(5) [lack of jurisdiction over the person is (2)] in the answer along with defenses to the merits does not bring about any waiver of these defenses * * *

"Under the former practices, both at law and in equity, a party could, by proper procedure, raise the defenses (1)–(5), and losing thereon proceed to litigate on the merits, and losing on the merits appeal, and attack the judgment, both on the merits and on such grounds (1)–(5) as he had urged. Thus a judgment on the merits for the plaintiff would be set aside, where the defendant had properly challenged the jurisdiction over his person, or that the venue was improper, and the lower court was in error in denying his defense. Rule 12(b) does not change that rule. * * *

"Special appearances are no longer necessary in any case. * * * A voluntary appearance does not waive the objection of lack of jurisdiction over the person. * * * Removal of an action from a state to a federal court does not constitute a general appearance or a waiver of defects in service of process."

13. Vanderbilt v Vanderbilt, 345 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

citing the landmark case of Pennoyer v. Neff, supra.

It is understandable that the court below could have gathered from some of the language of McGee, then just published, that the Supreme Court had launched upon a severe breach with the stable moorings of the historical concepts illustrated by Pennoyer v. Neff; but that language must be interpreted in the light of the facts with which the court was there dealing. The Court of Civil Appeals of Texas [14] had refused to honor a default judgment rendered by a California court, on the ground that under the Fourteenth Amendment, California's statutes did not constitutionally authorize a personal judgment against International. Those statutes provided that delivery by a non-admitted insurance company of insurance contracts to residents of California constituted an appointment by the insurer of the insurance commissioner as its agent for the service of process in a suit based upon such contract. The Supreme Court reversed and found the limits on the power of state courts recognized in Pennoyer v. Neff to be a matter which had been the subject of "prolific controversy, particularly with respect to foreign corporations." The court found that there was a clearly discernible trend towards expanding the permissible scope of state jurisdiction in such matters, particularly with respect to foreign corporations.[15]

Viewed against the background of its facts and of the authorities upon which its decision was based, McGee therefore does not represent the breach with Pennoyer v. Neff which appellee seeks to ascribe to it, and does not furnish authority for the action by the court below upon appellant's challenge to its jurisdiction.

---

14. McGee v. International Life Ins. Co., Tex.Civ.App., 1956, 288 S.W.2d 579.

15. The court leaned heavily upon its decision of a decade before McGee, in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, where the question of minimum contacts by corporate entities such as to authorize suits against them had been discussed at length. Neither the court below nor appellee stressed that case, but it really constitutes the prime basis for the "minimal contact" concept. There, the court was dealing with a statute of the State of Washington, upheld by the Supreme Court of that state, which required corporations conducting activities within the state to make contributions to the State Unemployment Compensation fund. In a suit challenging the constitutionality of that statute, the Supreme Court held the statute constitutional and also held, under the facts there before it, that service on an agent of the corporation resident in Washington was sufficient to confer jurisdiction on the court. The Supreme Court discussed many of the cases wherein the sufficiency of the "presence" of a corporation within a state for the purposes of suit had been considered and defined. This language (326 U.S. at pages 316–317, 66 S.Ct. at page 158) constitutes the pith of its holding:

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, * * it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. * * * For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * *

" 'Presence' in the state in this sense had never been doubted when the activities of the corporation there had not only been continuous and systematic, but also give rise to the liability sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given."

The conclusion reached by the Supreme Court (326 U.S. at page 320, 66 S.Ct. at page 160) was: "Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. * * * It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. * * * "

It is not necessary to attempt to probe the intricacies of Hanson v. Denckla beyond nothing that Mr. Justice Black, dissenting [16] thought that the majority decision "stems from principles stated the better part of a century ago in Pennoyer v. Neff. * * *" The majority did not indicate that it was taking back anything said in McGee, International Shoe Co. or Vanderbilt supra, but it declined to hold that a Florida court had either *in rem* or *in personam* jurisdiction over a Delaware corporation, trustee of intangibles which were indicia of ownership of property in Florida. The court said (357 U.S. at page 251, 78 S.Ct. at page 1238): "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." What the court did in Hanson was to approve the action of a Delaware court declining to enforce a Florida judgment even though Mrs. Donner, the settlor of the trust upon the Delaware corporation, was a resident of Florida and had died there and her estate was being administered there and more than ninety-five per cent of the beneficiaries of the trust and of her estate resided there.

However much the concepts concerning state jurisdiction to render judgments may be in flux, it is clear that none of the cases discussed furnish authority for the action taken by the court below in this case. At the time it announced its rejection of appellant's challenge to the jurisdiction, it had heard no evidence concerning any contacts he may have had with the State of Texas, and the court made no finding of any such contacts. Even accepting appellee's estimate of the facts ultimately developed at the hearing on the merits (the showing being at best meager and confused), this case is not brought within the ambit of any case cited or discussed. Appellee's contentions as to the facts may be thus summarized:

Appellee, on May 21, 1956, sold to William Joseph Friedman, III, and others an undivided one-half interest in certain leases owned by it in Texas, and Friedman held title to the fractional interest purchased by him until it was transferred by trustee's sale May 7, 1957 to appellant. This sale was in connection with a suit filed in a Texas court by appellant against Friedman, which resulted in a judgment dated Dec. 9, 1957 reciting that appellant had been the equitable owner of the interests held by Friedman since their acquisition by him. During the time he held title, Friedman was advised of certain water-flooding operations being conducted by appellee and he recognized his status to be that of owner of a working interest with appellee in said leases and he contributed a portion of the maintenance and development expenses. After the conveyance to appellant, the latter was kept advised of appellee's operations and was rendered bills for the share of the operating costs appellee claimed he owned, but he never made any payments thereon.

All of the cases relied upon involved foreign corporations whose contacts with the states wherein the suits were brought were made through the activities of its agents. Cf. our decisions in Rosenthal v. Frankfort Distillers Corp., 5 Cir., 1951, 193 F.2d 137; Employers' Liability Assurance Corp. v. Lejeune, 5 Cir., 1951, 189 F.2d 521; and Stanga v. McCormick Shipping Corp., 5 Cir., 1959, 268 F.2d 544. At most, the only contact appellant had with Texas was that he was the owner of an undivided interest in some oil leases there. He was at all times an individual who had his residence and citizenship in the District of Columbia and was not present in Texas either actually or through the conduct of any business activities there. The cases are therefore inapplicable to the facts before us.

Being of the clear opinion that appellant was not subject to suit in the State of Texas in which a personal judgment could be rendered against him and that the facts before the court below demonstrated his status without controversy,

---

16. 357 U.S. at page 260, 78 S.Ct. at page 1243.

we think it was error for the court below to deny his plea to the jurisdiction and to proceed to trial and to the entry of a personal judgment against him.

The judgment of the lower court is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Cameron, Circuit Judge, dissented.