**LONE STAR MOTOR IMPORT, INC.,**
Plaintiff,

v.

**CITROEN CARS CORPORATION,**
Defendant.

Civ. A. No. 12940.

United States District Court
S. D. Texas,
Houston Division.

June 2, 1960.

Hirsch & Westheimer, W. R. Ellis, Houston, Tex., for plaintiff.

Fulbright, Crooker, Freeman, Bates & Jaworski, W. N. Arnold, Jr., Houston, Tex., for defendant.

INGRAHAM, District Judge.

Action for breach of contract. The case is before the court upon defendant's motion to quash summons and complaint after removal of the action from state court.

The controversy concerns a three-year contract between plaintiff, a Texas corporation with its principal place of business at Houston, and defendant, a New York corporation located in the City of New York, for establishment of an exclusive distributorship of certain models of Citroen automobiles in Texas, Oklahoma, Louisiana, Kansas, Arkansas, and Missouri. As distributor, plaintiff was obligated to set up a network of dealers to sell the automobiles and to purchase from defendant a minimum of 600 automobiles the first year, 1,000 automobiles the second year, and 1,200 the third year. Executed on April 1, 1958, the contract was for a period beginning on the date of execution and ending on April 1, 1960. There is no allegation concerning the contract's place of negotiation or execution, though it appears to have been entered into outside of the State of Texas. (Defendant's brief, p. 7). Since the territory of the distributorship included Texas, it would appear that the parties intended the contract to be performed partially in Texas.

Alleging performance of its obligations under the contract, plaintiff claims that it made substantial investments in building a dealership organization to provide sales outlets for defendant's automobiles and in promoting public acceptance of said automobiles in its territory. It is alleged that defend-

ant repudiated the contract in May or July 1959. The petition was filed in the District Court of Harris County, Texas, 80th Judicial District, on November 20, 1959. Citation and copies of said petition were served upon the Secretary of State of Texas as defendant's agent for service of process pursuant to Article 2031b, Revised Civil Statutes of the State of Texas, on November 27, 1959, and were transmitted to the office of defendant at 300 Park Avenue, New York City, New York. The case was removed to this court on December 15, 1959.

It is admitted that defendant is a New York corporation and does not maintain a place of regular business in Texas or a designated agent upon whom service may be obtained upon causes of action arising out of business done by defendant in Texas. It is alleged that this action arises out of business done by defendant in Texas and that under these circumstances service of process may be obtained by delivering to the Secretary of State of Texas, as defendant's agent for service, duplicate copies of process in this action, one of which may be sent by the Secretary by registered mail, return receipt requested, to defendant's home office.

This substituted service is said to comply with Article 2031b, Vernon's Annotated Texas Statutes, which became effective on August 12, 1959. Article 2031b reads in relevant part as follows:

"Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceeding arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

"Sec. 4. For the purposes of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

Plaintiff contends that jurisdiction has been obtained over defendant pursuant to Article 2031b, which became effective prior to the filing of this action and which is remedial in nature. Thus it maintains that application of Article 2031b to permit service upon defendant would not be a retroactive law in violation of Article 1, Section 16 of the Constitution of the State of Texas, Vernon's Ann.St. and that Article 2031b does not violate the due process clause of the Fourteenth Amendment of the Constitution of the United States.

Defendant contends that jurisdiction has not been obtained over it, since termination of the contract occurred prior to the effective date of Article 2031b and because the application of said statute to permit service upon it would be a retroactive law in violation of the state constitution. Prior to the enactment of Article 2031b, it maintains that the law of Texas was that a non-resident corporation having a contract of distribution with a Texas distributor was not doing business in Texas and was not subject to service of process by Texas citation. If Article 2031b applies to it, defendant contends that the statute vio-

lates the due process clause of the Fourteenth Amendment.

The court believes that defendant's motion to quash summons and complaint should be granted. As applied to permit service of process upon defendant, Article 2031b is not a retroactive law in violation of Article 1, Section 16 of the state constitution, but it does deprive defendant of due process of law guaranteed by the Fourteenth Amendment of the Federal Constitution.

■ The court will consider first the alleged retroactive application of Article 2031b. Article 1, Section 16 of the Constitution of the State of Texas states, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." It is well settled that remedial and procedural statutes of Texas are not subject to the constitutional prohibition against retroactive laws and apply both to pending and future actions, unless otherwise providing. From the date such statutes become operative, all proceedings must be had under the new law. 39 Texas Jurisprudence, Sec. 28, pp. 55–57. The Supreme Court of Texas stated the rule as follows in Phil H. Pierce Co. v. Watkins, 1924, 114 Tex. 153, 263 S.W. 905, at page 907:

"* * * It is the settled law that a litigant has no vested right in a remedy, and that remedial statutes are valid and control the litigation from the date they become a law, and all proceedings taken thereafter must be under the new law."

In McGee v. International Life Insurance Company, 1957, 355 U.S. 220, at page 224, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, the Supreme Court of the United States, construing a California statute for substituted service of process, stated:

"* * * The statute was remedial in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations under the contract. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights [it] might have against respondent. At the same time respondent was given a reasonable time to appear and defend on the merits after being notified of the suit. Under such circumstances it had no vested right not to be sued in California."

The Fifth Circuit held that the McGee case authoritatively answers the questions of retroactivity and applicability of state statutes for substituted service of process to non-residents served outside the state under the Federal Constitution. In Bluff Creek Oil Company v. Green, 5 Cir., 1958, 257 F.2d 83, at page 85, the court stated concerning a 1955 Illinois process statute:

"* * * the service of process statute did not add to or create new liabilities which were then sought to be retrospectively asserted. What the process law does is merely provide for the effectual assertion of that right, a means of doing so through local courts. As a remedial, procedural statute, it could constitutionally apply to supply effective machinery for the assertion of existing substantive rights which, of course, on Green's Illinois State Court complaint came into being as a result of the transactions in 1951."

■ The question of jurisdiction involved in substituted service of process is a remedial or procedural matter not involving a vested right that may be impaired by retroactive application of the statute. Defendant's further contention is that procedural remedies do not have retroactive effect unless such intention is expressed in the act or may be clearly inferred from the circumstances surrounding its passage or immediately preceding it. City of Ft. Worth v. Morrow, Tex.Civ. App., Ft. Worth, 1926, 284 S.W. 275 ref., n. r. e. The Morrow case involved the validity of an appeal granted 11 days before the statute authorizing such an appeal became effective. Clearly the statute could not authorize an appeal

before its effective date. This situation is distinguishable from the case at bar in which service of process is sought after the effective date of the statute on a cause of action that accrued before that date. There is equally good authority that a remedial or procedural statute, not otherwise providing, generally applies both to pending and future actions. Plummer v. Van Arsdell, Tex.Com. App., 1927, 117 Tex. 200, 299 S.W. 869; 39 Tex.Jur. Sec. 28, p. 56. Where vested rights would not be impaired, uniform application of remedies and procedure from their effective date is essential to an orderly judicial system.

The court will consider now whether service of process pursuant to Article 2031b, subjecting defendant to the jurisdiction of the Texas courts, would violate the due process clause of the Fourteenth Amendment. The constitutionality of Section 4 of Article 2031b is directly in issue, since plaintiff does not allege a broad range of defendant's activities which might be considered doing business within the state but confines itself to alleging the minimum requirement of jurisdiction, namely, "entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

Plaintiff could have alleged other acts of defendant that would constitute doing business within the state. The court wonders how many automobiles were shipped by defendant under the contract, how many were delivered in Texas, and whether defendant's agents ever entered Texas to negotiate the contract, render technical assistance, or instruct plaintiff's mechanics in the mechanism of the automobiles? How closely did defendant supervise the alleged establishment of a dealership organization? Clearly such an important contract created a continuing relationship between plaintiff and defendant involving many such acts of doing business, yet none of them are alleged, much less

substantiated by affidavits or discovery. Instead, all the court is presented with is a contract entered into with plaintiff, a resident of Texas, to be performed in whole or in part within the state. No act of doing business by defendant is alleged beyond the entry into this contract. With such strict statutory compliance this is the only basis upon which the constitutionality of service upon defendant and of Article 2031b can be considered.

■ It is evident that personal jurisdiction obtained under the letter of Section 4 of Article 2031b violates the due process clause of the Fourteenth Amendment. The original view was that a judgment in personam against a non-resident was void and violated the due process clause, unless he appeared or was served personally within the state. Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565. Subsequent cases permitted expansion of the state's judicial power over non-residents, including corporate entities. The early decisions relied on various tests to determine whether or not a non-resident, served with process outside the state, was subject to the jurisdiction of the court, such as "implied consent," "presence," and "doing business" within the state.

These criteria were discarded in favor of a view emphasizing the substance of due process and requiring only "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." International Shoe Company v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The court concluded at 326 U.S. 319, 66 S.Ct. 160:

"* * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or cor-

porate defendant with which the state has no contacts, ties, or relations."

The International Shoe case involved systematic and continuous solicitation of orders for merchandise by defendant's salesmen within the forum state, resulting in a large volume of interstate business. It was an open question, however, whether a single transaction or contract would be sufficient to satisfy the requirement of minimum contacts with the forum state. In McGee v. International Life Insurance Co., supra, the Supreme Court seemed to answer this question affirmatively, holding that "it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." McGee, supra, 355 U.S. at page 223, 78 S.Ct. at page 201.

Summarizing the evolution of due process in this field, the Supreme Court stated in McGee:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." McGee, supra, 355 U.S. at page 222, 78 S.Ct. at page 201.

Turning to the facts of the McGee case, a unanimous court sustained jurisdiction obtained under a section of the California Insurance Code which subjected foreign corporations to suit in California on insurance contracts with residents of that state, even though such corporations could not be served with process within its borders. The reinsurance contract involved was mailed by the foreign corporation to the insured in California. Premiums were paid by mail from the insured's California home to the corporation's Texas office. It did not appear that the foreign corporation ever had an office or agent in California or that it had ever solicited or done any insurance business there apart from the insurance contract involved therein. The insured was a resident of California when he died. When the foreign corporation refused to pay the beneficiary's claim, suit was brought on the contract in a California court, whose judgment was denied enforcement in the Texas courts as void under the due process clause.

These facts were considered to constitute a substantial connection between the contract and the forum state. The Supreme Court also found, though, that California had a "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." McGee, supra, 355 U.S. at page 223, 78 S.Ct. at page 201. It compared the disadvantageous position of small claimants in pursuing foreign corporations to distant forums with whatever inconvenience the foreign insurer might sustain in defending actions in the insured's local forum. In the balance of convenience the court did not find that the foreign corporation was denied due process of law in being held amenable to suit in California.

In the case at bar plaintiff contends that the McGee case justifies a process statute in which the minimum contact required of a non-resident defendant with the forum state is a contract to be performed in whole or in part within the state. Defendant would require continuous and systematic activity in the forum state, as held by the International Shoe case. It maintains that the McGee case represents the high-water mark of liberalism respecting service of

process and that the case is limited to the insurance field, which is impressed with the public interest. It claims that Article 2031b is applicable in its extreme breadth to the most minute contract between a non-resident and a resident of Texas, so long as the Texas resident must carry out some part of his obligation there.

Unfortunately the parties have not favored the court with the succeeding installments of the story. In Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, the Supreme Court reversed the judgment of a Florida court, Fla., 100 So.2d 378 which asserted jurisdiction by constructive service over a trustee resident in Delaware in a will controversy involving the trust assets that were located in Delaware. The settlor of the trust died domiciled in Florida. Her will, made after she acquired a Florida domicile, was probated there. Prior to the establishment of her Florida domicile, she executed the trust agreement in question in Delaware. By its terms she was to receive the income during her life. On her death the principal and undistributed income were to go as provided in any power of appointment, or failing that, in her last will and testament. After she became domiciled in Florida, she executed powers of appointment, also providing in her will that if the powers of appointment had not been effectively exercised, the property under the trust should pass under the residuary clause of her will.

Residuary legatees sought declaratory judgment in the Florida court to determine whether the powers of appointment were effectively exercised. Personal service was had upon the principal appointees and beneficiaries of the Delaware trust. About a dozen non-resident defendants could not be personally served, including the Delaware trustee. The Florida process statute permitted service by publication upon non-residents in any suit or proceeding to enforce liens or claims to any property within the jurisdiction and "for the construction of any will, deed, contract or other written instrument and for a judicial declaration or enforcement of any legal or equitable right, title, claim, lien or interest thereunder." Fla.Stat. 1957, Ch. 48, Secs. 48.01 and 48.02. Notice by mail was given to each of the non-residents to appear and defend, and notice was published locally as required by the Florida statute. The Delaware trustee was among those non-residents who made no appearance.

By a 5–4 decision the Supreme Court held that personal jurisdiction had not been obtained over the Delaware trustee, whom it held was an indispensable party to the Florida proceeding, since the acts of the trustee did not constitute minimum contacts with the State of Florida. The Delaware trustee had no office in Florida and did not solicit or transact any business there in person or by mail. The trust agreement had been executed in Delaware while the settlor was domiciled in Pennsylvania. Income had been remitted to the settlor in Florida. Several matters of trust administration, including the execution of the powers of appointment in question, were carried on with the trustee by mail.

Referring to the expanding personal jurisdiction over non-residents noted in the McGee case, the majority reaffirmed the minimum contacts doctrine of International Shoe, stating at 357 U.S. 251, 78 S.Ct. 1238.

"* * * But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418 [77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has

had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. Washington, 326 U.S. 310, 319 [66 S.Ct. 154, 159, 90 L.Ed. 95]."

The Supreme Court distinguished the McGee case therein on grounds that the claim did not arise from an act done or transaction consummated in the forum state, since it considered that the action involved the validity of the trust agreement that was entered without any connection with the forum state. Though it compared the remittance of income and transaction of trust administration to the mailing of premiums in McGee, the court could find no acts of the trustee comparable to the solicitation in Mc-Gee. Consequently, it felt that the action was not one to enforce an obligation arising from a privilege that the trustee exercised in Florida. Finally, the court distinguished McGee on the basis that California had enacted special legislation to exercise "its 'manifest interest' in providing effective redress for its citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and subjects to special regulation." Hanson, supra, 357 U.S. at page 252, 78 S.Ct. at page 1239.

Though the settlor and most of the appointees and beneficiaries were domiciled in Florida, the Supreme Court held that the Florida court could not exercise personal jurisdiction over the nonresident trustee. The Florida court did not acquire jurisdiction by being the "center of gravity" of the controversy or the most convenient location for litigation. "The issue is personal jurisdiction, not choice of law," the court stated. "It is resolved in this case by considering the acts of the trustee. As we have indicated, they are insufficient to sustain the jurisdiction." Hanson, supra, 357 U.S. at page 254, 78 S.Ct. at page 1240.

Considering the validity of the powers of appointment to be the primary issue, the minority in Hanson v. Denckla believed that the appointments had sufficient connection with Florida that its courts should have the power to adjudicate controversies arising out of the transaction, unless the burden of such litigation upon non-residents would offend "traditional notions of fair play and substantial justice." The minority emphasized the balance of convenience approach on the ground that Florida was a "reasonably convenient forum for all." Hanson, supra, 357 U.S. at page 259, 78 S.Ct. at page 1242.

What is the effect of Hanson v. Denckla on McGee v. International Life Insurance Company? There is a diversity of opinion on this question among the judicial circuits. The Seventh Circuit considers that Hanson limits McGee to the insurance field, as defendant contends. Trippe Manufacturing Company v. Spencer Gifts, Inc., 7 Cir., 1959, 270 F.2d 821, at page 822. On the other hand, the Fifth Circuit holds that the majority in Hanson "did not indicate that it was taking back anything said in McGee, International Shoe, or Vanderbilt * * *." Roumel v. Drill Well Oil Company, 5 Cir., 1959, 270 F.2d 550, at page 557. In the Roumel case our court of appeals declined, however, to sustain personal jurisdiction obtained pursuant to Rule 108 of the Texas Rules of Civil Procedure, where the defendant was a non-resident owner of an undivided interest in oil and gas leases situated in Texas that plaintiff was operating. Though liens were mentioned in plaintiff's pleadings, there had been no attachment of defendant's property to justify in rem or quasi-in-rem jurisdiction. Notice of pendency of suit involving property in Texas was given defendant outside the state. By its words and action the court indicated that McGee did not herald "the eventual demise of all restrictions on the personal jurisdiction of state courts." Roumel, supra, 270 F.2d at page 557, citing Hanson, 357 U.S. at page 251, 78 S.Ct. 1228.

Perhaps the emerging interpretation of the Hanson case is found in those opinions that re-emphasize the minimum

contacts doctrine of International Shoe and cite the statement of Hanson that "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Insull v. New York World-Telegram Corporation, D.C.N.D.Ill., 1959, 172 F.Supp. 615, at page 631, citing Hanson, 357 U.S. at page 253, 78 S.Ct. 1228. This approach would examine closely the actions of the defendant, rather than the plaintiff, regarding the forum state and would underline the *"substantial* connection" between a contract and the forum state required by McGee and its progeny. McGee, supra, 355 U.S. at page 223, 78 S.Ct. 199; Acme Engineers v. Foster Engineering Company, 5 Cir., 1958, 254 F.2d 259; Bluff Creek Oil Co. v. Green, supra; MacInnes v. Fontainebleau Hotel Corp., 2 Cir., 1958, 257 F.2d 832; WSAZ Inc. v. Lyons, 6 Cir., 1958, 254 F.2d 242; Reeder Contractors of Arizona v. Higgins Industries, 9 Cir., 1959, 265 F.2d 768.

Determination of such a "substantial connection" requires evaluation of the facts in each situation. The factors to be studied may include the nature and character of the business, the number and type of activities within the forum, whether such activities give rise to the cause of action, whether the forum has some special interest in granting relief, and the relative conveniences of the parties. Such an evaluation cannot be made in the case at bar, though plaintiff has complied with the letter of Article 2031b and claims jurisdiction over defendant thereunder.

▇ The allegations show that a substantial automobile distributorship including Texas within its territory was involved. They allege, however, only one activity of defendant connecting it with the forum state, namely, entry into one contract to be performed in whole or in part by either party in Texas, though the contract is alleged to give rise to the cause of action. There is no indication that the forum state has any special interest in granting relief, apart from its natural desire to hold non-residents liable in its courts for alleged wrongs to its residents. There is no argument concerning the relative conveniences of the parties justifying jurisdiction of the Texas courts. The court is asked to presume that any contract meeting the minimum definition of doing business in Section 4 of Article 2031b constitutes a minimum contact with the State of Texas such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. As indicated by the Hanson case, territorial limitation of state court jurisdiction in personam is still a vital principle guaranteed by the due process clause.

The court has seen no case that has lowered the barriers of due process to a level sustaining jurisdiction under the letter of Section 4 of Article 2031b. In Grobark v. Addo Machine Company, 1959, 16 Ill.2d 426, 158 N.E.2d 73, the Supreme Court of Illinois denied personal jurisdiction in a distributorship situation involving many more contacts with the forum than are alleged in the case at bar. The jurisdictional statute involved, Sections 16 and 17 of the Civil Practice Act, Ill.Rev.Stat., 1955, Ch. 110, pars. 16 and 17, would have permitted personal jurisdiction over a non-resident on any cause of action arising out of "the transaction of any business within this State" by the non-resident. Decided in light of the Hanson case, Grobark represents a retreat from the position taken by the Illinois court in Nelson v. Miller, 1957, 11 Ill.2d 378, 143 N.E.2d 673, which sustained Sections 16 and 17 regarding "the commission of a tortious act within this State." The Court of Appeals for the Seventh Circuit followed the Grobark case in Trippe Manufacturing Company v. Spencer Gifts, Inc., supra, denying jurisdiction over a non-resident who had only mailed catalogues into Illinois.

As applied to defendant, therefore, Section 4 of Article 2031b deprives defendant of that due process of law guar-

-anteed by the Fourteenth Amendment of the Constitution of the United States. Defendant's motion to quash summons and complaint will be granted. The clerk will notify counsel to draft and submit judgment accordingly.