Carolyn Lyvonne HEARNE, Cleon J. Hearne, and Opal M. Hearne

v.

DOW–BADISCHE CHEMICAL COMPANY, Dow Chemical Company, the Goodyear Tire & Rubber Company, and McCartney Manufacturing Company, Inc.

Civ. A. No. 2900.

United States District Court
S. D. Texas,
Galveston Division.

Dec. 10, 1963.

Combs & Mitchell (W. A. Combs), Houston, Tex., for plaintiffs.

Vinson, Elkins, Weems & Searls (Gaius G. Gannon, Jr.), Houston, Tex., for defendant Dow-Badische Chemical Co.

Fulbright, Crooker, Freeman, Bates & Jaworski (Sam W. Cruse), Houston, Tex., for defendant Dow Chemical Co.

Fred Parks, Houston, Tex., for defendant Goodyear Tire & Rubber Co.

McLeod, Mills, Shirley & Alexander (V. W. McLeod), Galveston, Tex., for defendant McCartney Manufacturing Co.

NOEL, District Judge.

This case is before the Court upon the motion of defendant McCartney Manu-

facturing Company, Inc. to quash service and to dismiss the complaint against it because of lack of jurisdiction. This defendant, a foreign corporation, will be referred to as McCartney.

The case involves a suit for damages for the death of Benny David Hearne brought by his widow, Carolyn Lyvonne Hearne, and his parents, Cleon J. Hearne and Opal M. Hearne, all of whom are hereinafter called plaintiffs.

The plaintiffs allege that decedent was employed by General Industrial Service, which had contracted with the defendants Dow-Badische Chemical Company and Dow Chemical Company to furnish labor and to install and operate a plant of the two defendants in Freeport, Texas, which plant manufactured and processed plastics and other chemical and petroleum by-products. The plaintiffs further allege that some time prior to December 17, 1961 the defendant Dow-Badische Chemical Company designed and manufactured a certain type of valve, but before its installation, said defendant engaged McCartney to redesign and remanufacture the valve. Specifications for the valve were sent to McCartney by mail from the Houston, Texas, offices of Dow Chemical Company. The valve was shipped directly to the Dow-Badische Chemical Company at its Texas plant, but it was sent f.o.b. Baxter Springs, Kansas, and was transported by Yellow Transit Freight Lines on March 9, 1961.

It is alleged that the redesigned and remanufactured valve was installed in the plant at Freeport, Texas, where it became a part of the machinery and equipment used by the defendants Dow-Badische Chemical Company and Dow Chemical Company in the manufacturing and processing of a chemical known as cyclohexane gas. On or about December 17, 1961, while decedent was performing certain work at the plant in Freeport, Texas, pursuant to the contract of his employer General Industrial Service, a defect in the valve allegedly caused a lack of cyclohexane gas. It is further alleged that after an unsuccessful attempt by decedent and his fellow workmen, acting under the directions of agents of the defendants Dow Chemical Company and Dow-Badische Chemical Company, to correct the leak they were directed by the agents to drain the gas from the valve and container attached thereto into a storage tank by means of a four-inch hose, with shank adapter couplers, which had been purchased from the defendant The Goodyear Tire & Rubber Company. Immediately after they connected the hose to the valve and to the storage tank one of the couplings on the end of the hose allegedly pulled loose from the hose, enabling cyclohexane gas to gush out in great quantity and to quickly pervade a large area; and before the workmen could escape, an explosion occurred which fatally injured the decedent.

Plaintiffs allege that the explosion and the resulting death of the decedent are due to the negligence of the defendant McCartney in improperly designing, manufacturing, and inspecting the valve, and in failing to warn of its dangerous nature, or in the alternative to a breach by McCartney of an implied warranty. Plaintiffs further allege that certain acts or omissions of the other defendants were also responsible for the injury.

McCartney is not a resident of and is not authorized to do business in the State of Texas. It was served with process in accordance with the provisions of Article 2031b, Vernon's Texas Revised Civil Statutes Annotated, which was in full force and effect when the alleged tort occurred and which reads in relevant part as follows:

"Sec. 3. Any foreign corporation, association, joint stock company, partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State

shall be deemed equivalent to an appointment by such foreign corporation, joint stock company, association, partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceeding arising out of such business done in this State, wherein such corporation, joint stock company, association, partnership, or non-resident natural person is a party or is to be made a party.

"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

Plaintiffs contend that jurisdiction has been obtained over McCartney through service of process, pursuant to Section 3 of Article 2031b, on a foreign corporation deemed to be doing business in Texas because of its committing a tort in whole or in part in the State, as provided in Section 4 of the same Article.

McCartney contends that jurisdiction has not been obtained over it because it was not doing business in Texas within the purview of said Section 4, or in the alternative, that Article 2031b is either unconstitutional or under the facts of this case would be unconstitutional in its application to McCartney.

■ The first step in determining the sufficiency and validity of service of process on a foreign corporation under the law of a state is to ascertain whether that law was intended to encompass the challenged service. If so intended, the next step is to determine whether the state law as applied offends the Federal Constitution. Lone Star Motor Import,

Inc. v. Citroen Cars Corp., 288 F.2d 69 (5th Cir. 1961); Stanga v. McCormick Shipping Corp., 268 F.2d 544 (5th Cir. 1959).

Section 4 of Article 2031b defines doing business in the state to include,

(1) "entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State or

(2) "the committing of any tort in whole or in part in this State."

■ The first question before this Court is whether in an action against a foreign corporation which manufactured a valve in a state other than Texas but shipped it to a corporation in Texas, where it caused an explosion injuring a person, the foreign corporation committed a tort in whole or in part within the State of Texas. This question is to be determined by state law; however, there are no Texas cases determining the type of situations that constitute doing business within the purview of Article 2031b because Texas did not allow a special appearance to contest jurisdiction before September 1, 1962 when Rule 120a of the Texas Rules of Civil Procedure became effective.

There is, however, one case by a federal court sitting in Texas holding that under the particular facts there presented a defendant was not "doing business" within Article 2031b. The case, Pliler v. Asiatic Petroleum Co., 197 F.Supp. 212 (S.D.Tex.1961), involved a tort action in which an in personam judgment for damages for the death of two men in an oil field accident in Venezuela was sought. The defendant was an oil-producing Canadian corporation operating solely in Venezuela; it had neither office nor assets in Texas. Plaintiffs' decedents were employees of an independent contractor which had contracted to drill a well in Venezuela for the defendant, and the two decedents were so engaged when the accident occurred. Plaintiffs requested the issuance of process upon the defendant pursuant to Article 2031b. The defend-

ant's contacts with Texas consisted of an operating agreement whereby a Delaware corporation was to secure applicants for employment for the defendant's oil operations in Venezuela, and pursuant to which agreement the Delaware corporation occasionally utilized a Texas subsidiary to obtain Texas applicants. The requested issuance of process was not based on the tort-committed-in-whole-or-in-part provision of Article 2031b, but was based apparently upon the general "doing business" provision of the article. The Court held that the defendant did not have sufficient contacts to be considered "doing business" in Texas within the purview of Article 2031b.

Since there are no Texas cases dealing with the precise question before this Court, it is helpful to examine cases from other states involving the applicability of similar statutes to similar situations.

In Hellriegel v. Sears Roebuck & Co., 157 F.Supp. 718 (N.D.Ill.1957), the Court held that an Illinois statute, Ill.Rev.Stat. 1957, c. 110, Sec. 17, permitting substituted service for actions arising out of "[t]he commission of a tortious act within this State" did not encompass a cause of action for personal injury arising out of the negligent manufacture of a lawn mower in a state other than Illinois, although the injury occurred in Illinois. The Court emphasized that the statute language was the "commission of a tortious act within this State" and that the tortious acts were the manufacture and sale of a dangerous article without warning as to its nature, all of which occurred outside of Illinois with only the damage occurring in Illinois.

Furthermore, the Hellriegel case is of little persuasion, for the judge who wrote the opinion reached a different conclusion in McMahon v. Boeing Airplane Co., 199 F.Supp. 908 (N.D.Ill.1961) because the Illinois Supreme Court had spoken on the question in the interim. In the McMahon case he said the following:

> "While the present motion was not pending in this case, the Illinois Supreme Court decided the case of Gray v. American [Radiator &]

Standard et al., 22 Ill.2d 432, 176 N.E.2d 761, Docket No. 35872—Agenda 49—January, 1961, wherein the facts and legal issues were generally in accord with those of this, and the Hellriegel cases. In the Gray case the defendant, a foreign corporation, manufactured and sold valves outside of the State. Still another corporation inserted these valves into its heating units and sold one such unit to the plaintiff. The plaintiff was injured in Illinois when a valve exploded. The Court found Section 17 to be constitutional, and further held that the terms 'tortious act' and tort are synonymous. Thus, it would appear the Illinois Supreme Court has interpreted the language of Section 17 to include within the ambit of its scope those cases where none of the negligent action alleged in the complaint occurs in Illinois, but, where only the injury occurs in this State."

Although in McMahon an agent of the defendant was served while in Illinois, the case involved the question of whether the instant type fact situation was within the purview of the Illinois statute, as is evident by the statement of the Court that

> "The sole question presented, therefore, is whether plaintiff's cause of action, based on this injury, 'arises' from 'the commission' by the defendant 'of a tortious act within this State.' "

Wing v. Challenge Machinery Co., 23 F.R.D. 669 (S.D.Ill.1959), relied upon by the defendant, although containing facts similar to those here, did not involve a determination of whether the facts constituted the "commission of a tortious act within this State" within the purview of the Illinois statute and therefore is inapplicable. Moreover, it is very apparent from Gray v. American Radiator & Standard, supra, that the situation here is within the purview of the Illinois statute.

The Illinois statute differs from and is more restrictive than the Texas statute, for it says "[t]he commission of a tortious act within this State," whereas, the Texas statute says "the committing of any tort in whole or in part in this State." If the instant fact situation is within the reach of the Illinois statute, then *a fortiori* it should be within the reach of the Texas statute. The restrictiveness of the Illinois statute is indicated by the Court in the McMahon case, which after accepting the decision of the Illinois Supreme Court as determinative, expressed its personal feeling that

> "* * * I am * * * of the opinion that the words 'tortious act' as used in Section 17 are not synonymous with the word tort. The former term, more restrictive than the latter, refers only to the act or conduct and does not include the consequence thereof."

Most states, other than Illinois, with statutes allowing service on a foreign corporation under wording embracing a tortious act or tortious conduct, rather than a tort or a tort in whole or in part, hold that such statutes do not encompass a situation where the act or conduct occurs outside the state and only the injury occurs within the state of suit. E. g., see Southern New England Distributing Corp. v. Berkeley Finance Corp., 30 F.R.D. 43 (D.Conn.1962), involving a Connecticut statute; and see the following cases involving a Pennsylvania statute: Bailey v. Eiler, 30 F.R.D. 375 (W.D. Pa.1962); Baxter v. Coppock, 202 F. Supp. 907 (E.D.Pa.1962); Kramer v. Lakeside Laboratories, 200 F.Supp. 530 (E.D.Pa.1962). The importance of this difference in wording makes the cases interpreting the Illinois-type statutes of little value in interpreting the Texas statute.

Cases arising under a Minnesota statute, however, provide helpful guidance due to the great similarity of the Minnesota and Texas statutes. Section 303.13, subd. 1(3) Minnesota Statutes Annotated reads in pertinent part as follows:

> "(3) If a foreign corporation * * * commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota * * *."

In Mueller v. Steelcase, Inc., 172 F. Supp. 416 (D.Minn.1959), the Court quashed an attempted service upon a foreign corporation under the Minnesota statute by a plaintiff injured in Minnesota by a defective chair manufactured by the corporation and purchased by plaintiff from a Minnesota retailer. It is difficult to ascertain whether the holding of the Court was based on a determination of the inapplicability of the statute or on a determination of its unconstitutionality. Southern New England Distributing Corp. v. Berkeley Finance Corp., supra, held the Mueller case to be based upon the inapplicability of the Minnesota statute. I, however, interpret Mueller differently and feel the Court held the statute to be applicable but quashed service because of its unconstitutionality. This position is substantiated by the following language in Mueller:

> "It may be, as plaintiff urges, that Minnesota has attempted by this statute to thrust aside all prior concepts of that which constitutes the doing of business by a foreign corporation in the State and has endeavored to wipe out all jurisdictional barriers where any part of the commission of a tort in this State damaging a citizen may be attributed to a foreign corporation. But such an attempt baldly offends the Federal Constitution. * * * The declaration that the proximate result in Minnesota of a tortious act committed in another State by this defendant constitutes the doing of business in this State cannot be reconciled with the Federal Constitutional rights accorded a foreign corporation which has such meager contacts and connections in this State.

"In the final analysis, service of process against foreign corporations under state statutes must be tested by Federal law, and the landmark case in that regard is the International Shoe Company case [International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] * * *."

The later case of Hutchinson v. Boyd & Sons Press Sales, Inc., 188 F.Supp. 876 (D.Minn.1960) without question held a situation such as here to be within the purview of the Minnesota statute. Hutchinson involved an action for injuries sustained by an employee in Minnesota from a defective press which a foreign corporate defendant sold to the employer of the plaintiff. The Court said

"The place of the wrongful tort is the place where the legal injury occurs; hence, if the allegations of the complaint are established by competent evidence, the defendants' tortious conduct in Minnesota amounts to doing business to such an extent as to come within the jurisdiction of the court and the law of the forum * * *."

■ The decision is largely predicated upon the Minnesota conflict of laws rule that for the purpose of determining the applicable state substantive law the place of the tort is the place of the injury and not the place of the wrongful act or omission. This rule obtains in most states, including Texas. El Paso & N. W. R. Co. v. McComas, 36 Tex.Civ. App. 170, 81 S.W. 760 (Tex.Civ.App. 1904); El Paso & N. W. R. Co. v. McComas, 72 S.W. 629 (Tex.Civ.App.1903); Page v. Cameron Iron Works, Inc., 155 F.Supp. 283 (S.D.Tex.1957), rev'd on other grounds 259 F.2d 420 (5th Cir. 1957). For a discussion of this point, see 77 A.L.R.2d 1266 (1961).

■ Irrespective of the decisions in other states, the plain meaning of the Texas statute is that it applies to and embraces the fact situation before the Court. The Texas statute does not say tortious act or conduct or omission committed in the state, nor does it merely say tort committed in the state, but says "the committing of any tort in whole or in part in this State." In my opinion the wording "in part" is clearly intended to include a situation where the operative wrongful act occurs in another state but the injury occurs in Texas. Substantial weight is given to this conclusion by the statement of Judge Brown in Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69 (5th Cir. 1961), expressing the purpose of the Texas statute in the following words:

"Indeed, it seems highly likely that, as is true for similar legislation in many other states, see e. g., Stanga v. McCormick Shipping Corporation, supra, 268 F.2d at page 550; Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83, the Texas purpose was to exploit to the maximum the fullest permissible reach under federal constitutional restraints."

■ I therefore hold that Section 4 of Article 2031b, Vernon's Texas Revised Civil Statutes Annotated is applicable and provides for service of process on McCartney under the facts before this Court. I must now turn to the question of whether or not Article 2031b as thus applied offends the Federal Constitution.

The historical development of *in personam* jurisdiction by extraterritorial service over foreign corporations and nonresidents has been ably and fully related by Judge Ingraham in his opinion in Lone Star Motor Import, Inc. v. Citroen Cars Corp., 185 F.Supp. 48 (S.D. Tex.1960); therefore, I will only briefly review it.

Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), established the original view that a judgment *in personam* against a nonresident was void and violated the due process clause of the Fourteenth Amendment unless the nonresident appeared or was served personally in the state. Subsequent cases permitted the expansion of a state's judicial power over nonresidents, including corporate en-

tities, on the basis of fictions such as "implied consent," "presence," and "doing business within the state."

In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1943), these fictions were discarded and a new test was established. Under this test a court could acquire jurisdiction over a foreign corporation by extraterritorial service without violating the due process clause when the foreign corporation had certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'," and when the cause of action grew out of such contacts.

The establishment of this test created the new problem of determining what constitutes the "minimum contacts" envisioned by it. In situations involving systematic and continuous activities within the forum state, as were present in the International Shoe case, "minimum contacts" are clearly sufficient, but in many other fact situations there is uncertainty.

Later came McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which involved a suit on an insurance policy with service by registered mail in Texas, the foreign insurance company being held amenable to the jurisdiction of a California court because of a single insurance policy issued to a resident of that state coupled with correspondence and the receipt of premiums via the mails. In this case the United States Supreme Court seemed to hold a single transaction sufficient to satisfy the requirements of "minimum contacts" by stating "[I]t is sufficient for purposes of due process that the suit was based on *a contract* which had substantial connection with that State." [Emphasis added.] Moreover, in summarizing the evolution of due process in this field, the Court said "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents."

It was first thought that the Court in McGee substantially emasculated Pennoyer v. Neff by holding that slight "minimum contacts" would be sufficient to satisfy due process requirements. But then came Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), which appeared to limit McGee and to reaffirm the basic territorial limitation on the power of a state to subject nonresidents to jurisdiction. In Hanson, which involved a very complex fact situation, the United States Supreme Court reversed the judgment of a Florida court which asserted jurisdiction by substituted service over a trustee resident in Delaware in a will controversy involving trust assets that were located in Delaware. The settlor of the trust died domiciled in Florida, and her will, made after she acquired a Florida domicile, was probated there; however, prior to the establishment of her Florida domicile, she executed the trust agreement in question in Delaware, by which terms she was to receive the income during her life and on her death the principal and undistributed income were to go as provided in any power of appointment, or failing that, in her last will and testament. After she became domiciled in Florida, she exercised powers of appointment, also providing in her will that if the powers of appointment had not been effectively exercised, the property under the trust should pass under the residuary clause of her will. Residuary legatees sought a declaratory judgment in the Florida court to determine whether the powers of appointment were effectively exercised. A Florida extraterritorial process statute was used in serving the nonresident Delaware trustee and others.

The United States Supreme Court held that the trustee in McGee was not subject to the jurisdiction of the Florida court because he did not have sufficient "minimum contacts" with the state. Referring to the expanding personal jurisdiction over nonresidents noted in McGee, the majority of the Court stated

"But it is a mistake to assume that this trend heralds the eventual

demise of all restrictions on the personal jurisdictions of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

The Court then distinguished McGee partly on the grounds that California, the forum state of McGee, had enacted special legislation to exercise "its 'manifest interest' in providing effective redress for [its] citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and subject to special regulation."

Hanson tends to establish a standard for determining whether "minimum contacts" exist. After mentioning that the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of a contact with the forum state, the Court said

> "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Hanson leaves some uncertainty as to its effect upon McGee. It has been stated, as is contended here by defendant McCartney, that Hanson limits McGee to the insurance field which is impressed with the public interest. Trippe Mfg. Co. v. Spencer Gifts, Inc., 270 F.2d 821 (7th Cir. 1959). On the other hand, the Fifth Circuit has stated that the majority in Hanson "did not indicate that it was taking back anything said in McGee, International Shoe Co. or Vanderbilt [Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456[ * *.'" Roumel v. Drill Well Oil Co., 270 F.2d 550 (5th Cir. 1959).

There is still uncertainty as to what constitutes "minimum contacts," particularly as to whether McGee holds that slight contacts are sufficient. However, it is not necessary to resolve this uncertainty in order to dispose of the situation presently before this Court, for I feel that even by applying what would appear to be the more restrictive standard indicated in Hanson, the instant service would not violate due process under the Fourteenth Amendment to the Federal Constitution.

Various factors to consider in applying the standard contained in Hanson have been enumerated in Lone Star Motor Import, Inc. v. Citroen Cars Corp., 185 F.Supp. 48, 56 (S.D.Tex.1960), rev'd. on other grounds 288 F.2d 69 (5th Cir. 1961). There Judge Ingraham quashed service issued under the provision of 2031b providing for service on a foreign corporation that enters "into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State." He held that the application of the statute to the making of a single automobile distributorship agreement partially performable in Texas would be a denial of due process under the Fourteenth Amendment. The Fifth Circuit reversed on the ground that after the trial of the case the plaintiff was denied leave to amend its complaint to allege other acts of the defendant which would have been more than adequate to show sufficient "minimum contacts." That Court did not consider the correctness of the decision on the constitutionality of Article 2031b.

In my opinion, the factors enumerated by Judge Ingraham are correct guides for determining whether under the Hanson standard a defendant foreign corporation has "done some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"

so as to have "minimum contacts" with the forum. These factors are:

(1) The nature and character of the business;

(2) The number and type of activities within the forum; 1

(3) Whether such activities give rise to the cause of action;

(4) Whether the forum has some special interest in granting relief; and

(5) The relative convenience of the parties.

Employing these five factors as a formula for analyzing the facts in the instant case, McCartney's "minimum contacts" with Texas become apparent.

1. Nature and character of the business.

McCartney is a corporation which manufactures machines and machine parts, with Baxter Springs, Kansas, as its principal place of business. Although the corporation does not manufacture in Texas, it does attempt to sell its products in Texas, as is evident by the valve transaction in the instant case and by the various sales calls made by its salesmen in Texas during the past few years.

2. Number and type of activities within the forum.

There were considerable communications with parties within the forum in connection with the transaction in question. McCartney received the specifications for the valve by mail from the Houston, Texas, offices of Dow Chemical Company. It conducted negotiations for the manufacture of the valve by mail and telephone with the Dow Chemical Plant in Texas. The valve was shipped directly by it to the Dow-Badische Texas plant although the shipment was f.o.b. Baxter Springs, Kansas.

In addition to the instant transaction, McCartney has had past dealings with the Dow Chemical Company pertaining to Dow's business in Texas. Moreover, the corporation has had business contacts in Texas other than those with the Dow Chemical Company, and in 1962 it had not one but four different salesmen making sales calls in Texas.

The Texas activities of McCartney are not of the type where a non-Texas dealer sells a product to a customer who carries it into Texas or where a non-Texas manufacturer sells to a non-Texas independent distributor who then in the normal course of business introduces the manufacturer's product into Texas. McCartney sold and shipped the valve directly to a company in Texas. The valve was manufactured according to specifications necessary for its use in a specific machine in Texas. Therefore, it would appear that the literal meaning of the Hanson standard is satisfied by the type of activities carried on by McCartney in Texas, for by these activities it did "some act" by which it "purposefully" availed "itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

3. Whether such activities give rise to the cause of action.

The answer is yes, for the cause of action asserted against McCartney is essentially for the negligent design and manufacture of a defective valve, the use of which in Texas allegedly caused the accident in question and concerning which it had the previously discussed contacts with Texas.

4. Whether the forum has some special interest in granting relief.

This answer also is yes. It is true that in Mueller v. Steelcase, Inc., supra, the Court held that a Minnesota forum did not have a special interest in granting relief where a swivel chair manufactured by a nonresident defendant injured a Minnesota plaintiff. However, there is a great difference between the possible hazards created by the negligent manufacture of an ordinary swivel chair and those created by the negligent manufacture of a valve which is to become an integral part of machinery and equipment used in the manufacture and processing of a highly inflammable gas. I feel the State of Texas has a special interest in seeing that products delivered

within its borders, which are to be utilized in such a manner as to cause great hazard if negligently manufactured, are sound and to this end is interested in providing a forum where actions may be brought to compensate its injured residents and thus encourage a high standard of care on the part of the manufacturers. The Legislature undoubtedly had in mind this purpose, among others, in adopting Article 2031b.

5. The relative convenience of the parties.

The relative convenience of the parties to participate in a suit at the forum should be given considerable weight in determining whether a particular fact situation constitutes "minimum contacts" within the meaning of the Hanson standard. The cause of action asserted against McCartney is for negligence in the design, manufacture, processing and assembling of the gas valve, as well as the failure to properly and adequately test the valve before placing it in the channels of commerce. Most of the testimony pertinent to these matters would probably come from witnesses in Kansas, the place of manufacture of the valve. To this extent, Texas would be an inconvenient forum for McCartney.

McCartney, however, is not the only defendant in this case, and its negligence is not the only alleged cause of the death of plaintiffs' decedent. Plaintiffs allege that the defendants Dow-Badische Chemical Company and Dow Chemical Company caused the death (a) by their failure to set up an adequate and proper inspection system in the Texas plant to discover defects in the valve before its use in the movement of the inflammable gas, (b) by their failure to warn the decedent of the faulty nature of the valve and of their failure to inspect it, and (c) by their failure to take adequate precautions for the safety of the decedent and other workmen after the discovery of the leakage of gas. Since all of these alleged omissions occurred in Texas, testimony concerning them would normally come from Texas witnesses,

making Texas a convenient forum as to these defendants.

Plaintiffs also allege that defendant The Goodyear Tire and Rubber Company caused the death (a) by its negligence in the design, manufacture, processing and assembling of a rubber hose and its couplings and connections, (b) by its mutilating and altering the hose and connections in such a manner that the connections pulled loose from the hose thereby allowing the gas to escape, (c) by its failing to test the hose couplings, and (d) by its failure to warn the decedent of the faulty nature of said hose and couplings. Testimony as to most of these allegations would likely come from witnesses located at the place of the manufacture of the hose.

Regardless of where this case is heard, out-of-state witnesses will probably be required. Thus, the convenience of all parties considered, it appears Texas would be the more convenient forum, particularly since all of the parties except McCartney either reside or have an office in Texas, since the accident occurred in Texas, and since a great amount of defensive testimony and evidence will be given by witnesses probably living in Texas, i. e., testimony and evidence relating to contributory negligence, unavoidable accident, intervening negligence proximately causing the accident, etc.

Moreover, the other defendants, over whom there is jurisdiction in Texas, may not be amenable to jurisdiction in the state of the home office of McCartney. If plaintiffs are unable to obtain jurisdiction over McCartney in Texas, they might well have to bring suits in several states in order to obtain a complete adjudication of their rights. This would not only cause the plaintiffs inconvenience, it would create the undesirable result of multiplicity of suits.

Texas is the most convenient forum for yet another reason. Texas substantive law will govern the rights of the parties since the cause of action lies in tort and the general rule is that the

substantive law of the place of the injury governs in tort actions. It would be inconvenient for a non-Texas forum to have the task of discerning and applying Texas substantive law.

If the cause of action were brought in Kansas, the home office of McCartney, the Kansas Court would be required to apply Texas substantive law, for Kansas conflict-of-laws rules follow the general rule. Otey v. Midland Valley R. Co., 108 Kan. 755, 197 P. 203 (1921); 15 C.J.S. Conflict of Laws § 12. A contrary result was reached in Vrooman v. Beech Aircraft Corp., 183 F.2d 479 (10th Cir. 1950) but only because in that case the federal court held that it felt Kansas substantive law applied, although under Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court must apply the conflict-of-laws rules of the state in which it sits and if such had been done, the conflict-of-laws rules of Kansas, as enunciated in the Otey case, supra, would have required the application of the substantive law of the state of the injury. See 77 A.L.R.2d 1266, 1282.

Therefore, the factor of "the relative convenience of the parties," as evident by the previous discussion, dictates strongly in favor of the acquisition of jurisdiction over McCartney by this Texas forum.

After fully considering the various factors suggested by Judge Ingraham as a formula for analyzing the facts in the instant case, I hold that McCartney Manufacturing Company had sufficient "minimum contacts" with Texas that service of process under Article 2031b, already held to be applicable, would not violate the Federal Constitution.

Although Mueller v. Steelcase, Inc., supra, reached a different conclusion in a somewhat similar situation, I am not persuaded by it. A later case, Hutchinson v. Boyd & Sons Press Sales, Inc., supra, involving the same statute as Mueller and an even greater similarity to the facts here, reached the same conclusion that I now reach. Other cases

holding that the acquisition of jurisdiction under facts similar to those here does not violate the Federal Constitution are: Gray v. American Radiator and Standard Sanitary Co., 22 Ill.2d 432, 176 N.E.2d 761 (Ill.Sup.Ct. 1961); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (Ill.Sup.Ct.1957); S. Howes Co. v. W. P. Milling Co., 277 P.2d 655 (Okla.Sup.Ct. 1954).

I hold, on the basis of the facts of this case as analyzed and for all the reasons heretofore given, that Article 2031b is applicable and that the acquisition of jurisdiction in this case by virtue of service under the Article does not violate the due process clause of the Fourteenth Amendment to the Constitution of the United States. The motion of defendant McCartney Manufacturing Company to quash service and to dismiss the complaint as to it is therefore denied.