### MEINEKE DISCOUNT MUFFLER SHOPS, INC., Plaintiff,

v.

### Joseph FELDMAN, Esther Feldman, Nathan Shanak and Robert Benjamin, Defendants.

Civ. A. No. H–79–860.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 7, 1979.

---

Butler, Binion, Rice, Cook & Knapp, Houston, Tex. (David M. Ostfeld), Houston, Tex., for plaintiff.

Barry Allan Brown, Houston, Tex., and H. Paul Schiller, New York City, for defendants.

## MEMORANDUM AND ORDER

STERLING, District Judge.

Presently pending before the Court are the following motions: to quash service, to dismiss for lack of *in personam* jurisdiction, or, alternatively, to transfer this case to the Eastern District of New York made by all of the Defendants; Plaintiff's motion for entry of a default judgment against Joseph and Esther Feldman, Plaintiff's motion for a preliminary injunction, Plaintiff's motion for leave to file a second amended complaint; and a motion for a protective order joined in by all of the Defendants.

Meineke, a Texas corporation in the business of franchising discount muffler shops, brought this lawsuit against Mr. Feldman, one of its franchisees in New York, alleging that he breached his license agreement with Meineke. Meineke sued Mrs. Feldman, Nathan Shanak, and Robert Benjamin for allegedly inducing Joseph to breach the license agreement. The gravamen of the complaint is that Joseph breached the non-competition clause and the prohibition against divulgement of trade secrets in the course of aiding Esther in the operation of her rival budget muffler store. Plaintiff further complains that Joseph assigned his franchise to a group consisting of himself, Shanak, and Benjamin in violation of the license agreement and has also divulged trade secrets in the course of that operation.

In Mr. Feldman's motion to quash service, dismiss for lack of *in personam* jurisdiction, or, to transfer to the Eastern District of New York, he baldly asserts, without supporting affidavit, that he has not transacted business in Texas, and, that for the convenience of the parties and in the interest of justice this action should be transferred. Defendant Joseph Feldman's less than spirited defense of his claim that this Court does not have personal jurisdiction over him is understandable. In paragraph 25 of the license agreement, Defendant Feldman consented to jurisdiction and venue in any court of general jurisdiction in Harris County, Texas. Although parties cannot confer subject matter jurisdiction on a court, it is well settled that parties may agree in advance to submit to the jurisdiction of a certain court. *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), and *Aamco Automatic Transmissions, Inc. v. Hagenbarth,* 296 F.Supp. 1142 (E.D.Pa. 1968). Aside from the contractual consent to jurisdiction in Harris County courts, this Court is satisfied that an analysis of Joseph Feldman's contacts with the forum state indicates that the traditional tests of *in personam* jurisdiction are satisfied and that Mr. Feldman is amenable to suit here.

This is a diversity case and the Defendants were served in accordance with the Texas long-arm statute, Tex.Rev.Civ. Stat.Ann. art. 2031b. In order for this Court to assert personal jurisdiction over the non-resident Defendants, Texas law must confer jurisdiction over the persons of the Defendants, and if it does, the exercise of jurisdiction under state law must comport with the basic due process requirements of the United States Constitution. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974). The Texas long-arm statute attempts to reach all non-residents doing business in Texas. Doing business is defined as "entering into a contract by mail or otherwise with a resident of Texas to be performed in whole or in part

by either party in this State, or the committing of any tort in whole or in part in this State." The uncontradicted affidavit of Al Hirsch, an officer of Meineke, establishes that Joseph Feldman was in Harris County to discuss the license agreement with Plaintiff's representatives, to sign the license agreement and to receive training as required by the franchise agreement. Under these circumstances, Defendant Joseph Feldman was within the literal grasp of the long-arm statute, thus satisfying the first part of the *in personam* jurisdiction inquiry set out in *Product Promotions, supra.* The remaining inquiry concerns whether the Defendants have such minimum contacts with the forum that the maintenance of the lawsuit here does not offend traditional notions of fair play and substantial justice. *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An oft-accepted restatement of the minimal contacts test is whether the Defendant has purposefully availed himself of the benefits and protection of the forum state's laws. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Defendant Joseph Feldman has engaged in such purposeful activity in Texas by negotiating, consummating, and performing in part the license agreement in Texas. This Court concludes that it would be no affront to our traditional jurisprudential notions of due process to require Mr. Feldman to defend this lawsuit in Texas.

▮ Defendant Joseph Feldman has also moved to transfer this lawsuit to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). As this Court earlier noted Joseph Feldman consented to venue in Harris County, Texas, when he signed the license agreement. In *Plum Tree, Inc. v. Stockment,* 488 F.2d 754 (3rd Cir. 1973), the Court held that where the venue agreed upon in a forum selection clause is proper and the Defendant is sued in that district, the Defendant is deemed to have waived his right to move for a § 1404(a) transfer on the ground of inconvenience to him. He

may, however, move for transfer on the ground of inconvenience to the witnesses or in the interest of justice. The Court notes at the outset that venue is proper in this district under 28 U.S.C. § 1391(a). It is well settled that the movant has the burden of showing that a transfer to another district is warranted. *Struthers Scientific & International Corporation v. General Foods Corporation,* 290 F.Supp. 122 (S.D.Tex.1968). In order to shoulder the burden of showing that witness inconvenience merits transfer of a lawsuit, the movant "must provide precise information, in affidavit form, about the witnesses he intends to call and the anticipated areas of their testimony . . ." *Car-Freshner Corporation v. Auto-Aid Manufacturing Corporation,* 438 F.Supp. 82, 85 (N.D.N.Y.1977). Defendant Joseph Feldman's bald statement that "for the convenience of the parties and witnesses and in the interests of justice, this action should be transferred . . ." does not satisfy the heavy burden placed on a party seeking to transfer a suit to a different district. Therefore, Defendant Joseph Feldman's motion to transfer will be denied.

▮ Defendants Shanak and Benjamin have also contested service of process, personal jurisdiction, and alternatively, move to transfer this lawsuit to the Eastern District of New York. In Shanak and Benjamin's motion to quash service and to dismiss for lack of *in personam* jurisdiction, they assert, without accompanying affidavits that they have not transacted business in Texas. In Plaintiff's response to their motion to quash and to dismiss, Plaintiff argues not that Shanak and Benjamin were doing business in Texas but instead that these Defendants also consented to jurisdiction in Texas by virtue of the same contractual consent clause discussed above. Plaintiff's position in this regard is not consistent. In paragraph 5 of its first amended complaint Plaintiff alleges that "the license agreement was assigned by Joseph Feldman and Odded Adri to Defendants, Joseph Feldman, Nathan Shanak and Robert Benjamin." Plaintiff has attached a copy of

the assignment to its complaint. In paragraph 6 of the first amended complaint, Plaintiff further alleges that the assignment granted Defendants Mr. Feldman, Shanak and Benjamin the right to operate the Meineke Discount Center subject to the terms and conditions set out in the license agreement. In paragraph 18 of the first amended complaint, Plaintiff alleges that Mr. Feldman attempted to assign his rights and obligations under the license agreement to Shanak and Benjamin without complying with the conditions placed on assignment in the license agreement. The license agreement required that Meineke approve the proposed transfer, that the transferee execute a license agreement, that the transferee complete the Meineke training course, that the original licensee not be in default at the time of the transfer, and that the original licensee also execute a release of all claims and pay a transfer fee of $500. In paragraph 20 of the amended complaint, Plaintiff alleges that Defendants Joseph Feldman, Shanak, and Benjamin, "did not comply in any respect with the requirements of Paragraph 13 of the license agreement prior to the purported assignment by Defendant, Joseph Feldman, of his rights and obligations under the license agreement to Defendants, Nathan Shanak and Robert Benjamin. Any such assignment by Defendant, Joseph Feldman, without complying with the provisions of Paragraph 13 of the license agreement is null and void." Part of the relief requested by Plaintiff in its complaint is a declaration by this Court that the purported assignment by Mr. Feldman to Shanak and Benjamin is "void and of no force and effect." Plaintiff is apparently taking the position that the attempted assignment is void for all purposes except that Defendants Shanak and Benjamin are obligated by the consent to jurisdiction in Texas clause contained in the license agreement to defend this lawsuit in Texas. The copy of the assignment of the license agreement attached to Plaintiff's first amended complaint shows that it was executed by the assignees (Feldman, Shanak, and Benjamin), but does not indicate that either Mr. Feldman, as assignor, or Meineke, whose approval of the assignment was sought, executed the assignment agreement. Plaintiff has the burden of establishing that jurisdiction exists in this Court. *See, Product Promotions, supra,* at 490. The Court is of the opinion that Plaintiff has failed to show that Defendants Shanak and Benjamin have contractually consented to be sued in Texas. Furthermore, Plaintiff is estopped from maintaining that the assignment to Shanak and Benjamin was effective so far as the consent to suit in Texas is concerned, and ineffective in all other particulars. *See, generally,* 22 Tex.Jur.2d *Estoppel* § 11 wherein it is stated:

> "A person will not be permitted to accept the beneficial part of a transaction and repudiate the disadvantageous part. In other words, one who retains benefits under a transaction cannot avoid its obligations, and is estopped to take a position inconsistent therewith. Similarly, one cannot accept and reject the same instrument, or, having availed himself of the benefits conveyed by a part of an instrument reject its other provisions." [at pp. 674 and 675]

Therefore, the Court is of the opinion that *in personam* jurisdiction over Defendants Shanak and Benjamin cannot be predicated on the consent to jurisdiction clause contained in the license agreement. Although Shanak and Benjamin apparently signed an assignment of license agreement on March 29, 1978, accepting the terms and conditions contained in the license agreement, it has not been shown that Mr. Feldman signed the document as assignor, or that Meineke gave its approval as is called for in the assignment. Hoary precepts of contract law forbid giving any legal effect to a promise, such as this, not supported by any consideration or mutuality. Therefore, Defendants Shanak and Benjamin's motion to quash service and to dismiss for lack of *in personam* jurisdiction will be granted.

Defendant Esther Feldman also moves to quash service of process, dismiss for lack of jurisdiction over her person, or, to transfer to the Eastern District of New York.

In response Plaintiff argues that this Court has personal jurisdiction over Mrs. Feldman because she has committed at least part of a tort in Texas, see, art. 2031b(4), and that she has had the requisite minimum contacts with Texas. Plaintiff's suit against Mrs. Feldman alleges that she induced Mr. Feldman to breach his license agreement with Plaintiff by getting him to associate himself with her budget muffler shop in violation of the non-competition clause in the license agreement and by inducing him to divulge confidential information concerning the Meineke system. Plaintiff argues that these New York actions of Mrs. Feldman are Texas torts because Plaintiff suffered foreseeable economic injury in Texas as a result of her actions. The injury is allegedly Texas injury because Plaintiff is a Texas corporation. In addition, Plaintiff relies on the following contacts between Mrs. Feldman and Texas:

(1) Esther Feldman co-signed a financial statement which was later presented to Meineke by Joseph Feldman in order to secure his Meineke franchise; and

(2) Esther Feldman had numerous telephone conversations with Meineke representatives in Texas.

As noted earlier, in order for this Court to exercise personal jurisdiction over a non-Texas resident hailed into court by art. 2031b, it must appear that the defendant is amenable to service under the state long-arm statute and that the assertion of jurisdiction over the defendant does not offend due process. *See, Walker v. Newgent,* 583 F.2d 163, 166 (5th Cir. 1978). In order to satisfy the statutory requirement, Plaintiff relies on a line of cases which have held that an out-of-state act which causes injury in Texas satisfies the commission of a "tort in part" in Texas language of art. 2031b. *See, e. g. Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973) and *Hearne v. Dow-Badische Chemical Company,* 224 F.Supp. 90 (S.D.Tex.1963). The leading early cases involving an out-of-state act causing in-state injury involved defective products which were introduced into the stream of commerce, found their way into the forum state and caused injury

there. *See, e. g., Eyerly Aircraft Co. v. Killian,* 414 F.2d 591 (5th Cir. 1969); *Hearne, supra,* and *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). Where a defendant causes a defective product to enter a state and that product causes injury, courts have held that such is a substantial contact with the state and one for which states have traditionally had a special interest in granting relief. These cases should not be unthinkingly extended to cover essentially out-of-state acts which cause attenuated economic injury within the state. This Court is of the opinion that the present case does not fall within the *Eyerly* analysis.

It is important to bear in mind at this point that Texas courts have construed art. 2031b to extend to the outermost limits imposed by the due process clause of the United States Constitution. In *U-Anchor Advertising, supra,* the Texas Supreme Court stated that "such a construction is desirable in that it allows the Courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define 'doing business.'" (at page 762). The constitutional inquiry focuses on the fairness of subjecting the non-resident defendant to suit in a distant forum.

"Only if the nonresident defendant has such 'minimum contacts' with a state 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice,"' *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), or if the defendant has performed some act 'by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), may the forum, consistently with due process, extend its long arm to embrace it." *Jetco, supra,* [at 1234.]

In addition to the contacts enumerated above, that is, Mrs. Feldman's co-signing of the financial statement and her numerous phone calls to Meineke representatives in Texas, Plaintiff relies on cases holding that activities outside the forum state which have foreseeable effects in the forum state constitute contacts with the forum state for purposes of the due process analysis. *See, Great Western United Corporation v. Kidwell,* 577 F.2d 1256 (5th Cir. 1978), *rev'd, sub nomine* on other grounds, *Leroy v. Great Western Corporation,* —— U.S. ——, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir. 1977); *Black v. Acme Markets, Inc.,* 564 F.2d 681 (5th Cir. 1977); *Docutel Corporation v. S. A. Matra,* 464 F.Supp. 1209 (N.D.Tex.1979); *Hitt v. Nissan Motor Company, Ltd.,* 399 F.Supp. 838 (S.D.Fla.1975); and *Maricopa County v. American Petrofina, Inc.,* 322 F.Supp. 467 (N.D.Cal.1971). A comparison of Mrs. Feldman's contacts with Texas and the contacts of the non-resident defendants in the cases noted above convinces this Court that Mrs. Feldman's contacts with Texas are too miniscule constitutionally to support this Court's assertion of personal jurisdiction over her. In *Kidwell,* Idaho state officials were brought into the Texas courts to defend the Idaho takeover statute as it applied to a Texas corporation. In affirming the district court's assertion of personal jurisdiction over the Idaho state officials, the Fifth Circuit emphasized the uniqueness of a state's takeover laws.

"Idaho's 'business' is to regulate. It was conducting that business in Texas. . . The Idaho officials deliberately cast their regulatory net across the United States. They knew those regulations would entangle transactions with no connection to Idaho. It is not unfair or unreasonable to require an Idaho official to travel from his home when one of the participants in a non-Idaho transaction challenges the constitutionality of Idaho's interference. Although the Idaho officials may have been inconvenienced by the need to appear in Texas, they had ample resources to do so." (at pp. 1268 and 1269.)

Not only does Mrs. Feldman obviously not possess the resources that Idaho does, but the Texas effects of Idaho's regulation of takeovers are far more substantial than the diluted, once-removed effect in Texas of Mrs. Feldman's alleged tort. In addition to the out-of-state act producing effects within the forum state, the other cases cited above relied on the defendants' contacts with the forum state which are far more substantial than those present here. In *Data Disc, supra,* the out-of-state defendant negotiated the contract and oversaw its performance in the forum state. In *Black v. Acme Markets, supra,* the out-of-state defendant had made a large number of purchases within the forum state. In *Docutel, supra,* the non-resident defendant had substantial dealings in Texas with the plaintiff as well as with other manufacturers. In *Hitt, supra,* an antitrust price fixing case, the court analogized the sale of price-fixed goods to the sale of defective products within the forum state. In answering the question of whether the sale of defective products within a state is distinguishable from the sale of price-fixed goods the court stated:

"Cutting against such a distinction is the fact that, like a defective product, the injury within the forums which could result from a price fixing conspiracy by a manufacturer, its distributor and franchised dealers, is certainly foreseeable even though such injury is only of a pecuniary nature. It is a distinction without merit that a products liability injury arises out of the use of the product because injury as a result of the price fixing conspiracy is incident to the transaction or sale itself. The buyer who pays higher prices due to such a conspiracy is injured at the time such sale is consummated." (at page 847.)

Thus the court relied on not only the instate effect but also the in-state sale of a large number of products. Mindful of the Supreme Court's admonition that some effects within the forum state may be so insignificant that it is not reasonable to assert personal jurisdiction over the non-

**1314**

resident defendant, *see Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), this Court is of the opinion that Mrs. Feldman's contacts with Texas are too insubstantial for this Court to assert personal jurisdiction over her. *See, Computer Synergy Corp. v. Business Systems Products, Inc.,* 582 S.W.2d 573 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Therefore, Mrs. Feldman's motion to quash service of process under art. 2031b and to dismiss for lack of *in personam* jurisdiction will be granted.

The Court makes the following dispositions of the remaining motions presently pending before the Court. Plaintiff's motion for entry of a default judgment against Mr. and Mrs. Feldman is denied. It will be necessary to hold a hearing on Plaintiff's motion for a preliminary injunction. The parties will be notified by the Clerk of the Court as to the setting for that hearing. However, in the meantime, the parties should, by brief, address themselves to the efficacy of such an injunction hearing in light of this Court's dismissal of Defendants Mrs. Feldman, Shanak and Benjamin. Plaintiff is given 20 days from the date of the entry of this Memorandum and Order to respond, and Defendant Feldman's response will be due within 10 days after Plaintiff's response. Plaintiff's motion for leave to file a second amended complaint is granted. The motion for a protective order has been mooted as to three of the Defendants by this Court's action in dismissing Defendants Mrs. Feldman, Shanak and Benjamin. The parties should be able to agree on how to proceed with discovery as it pertains to the remaining Defendant Mr. Feldman.